## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JAMES E. KELLER,                      )
                                      )
    Plaintiff,                    )
                                      )
v.                                    )
                                      )   Civil Action No. 3:07CV433-HEH
                                      )
TOWN OF COLONIAL BEACH,               )
RYAN W. HOOD, and                     )
COURTLANDT A. TURNER,                 )
                                      )
    Defendants.                   )

### MEMORANDUM OPINION
**(Granting Defendants' Motion to Dismiss)**

This case originated from a police officer's use of a Taser device to subdue a disorderly man resisting an extended offer of police assistance. The matter is before the Court on Defendant Town of Colonial Beach's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and on Defendant Courtlandt A. Turner's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Court will grant Defendants' Motions.

## I. Background

Plaintiff James E. Keller filed suit against the Town of Colonial Beach ("Town" or "Colonial Beach"), Courtlandt A. Turner, the Chief of Police for the Town of Colonial Beach's Police Department ("CBPD"), and Ryan W. Hood, an officer of the CBPD, on July 23, 2007.  Keller, alleging that he sustained injuries from Hood's improper use of a Taser X26, seeks recovery under state tort claims for assault and battery as well as conspiracy and substantive claims under the Civil Rights Act.

On or about September 6, 2005, Keller's family called the CBPD for assistance with Keller, who was "acting strangely," presumably due to a degenerative neurological disease.  Defendant Hood responded to the call, but was unable to approach Keller, who waded waist-deep into the Potomac River and refused to return to shore.  An extended stand-off followed, during which the police and Keller's pastor attempted to convince Keller to come out of the river.  During this interval, which lasted approximately 2 hours, Defendant Hood unsuccessfully shot towards Keller once with his Taser.  With his pastor's coaxing, Keller eventually returned to shore.  At that point, in order to gain control over Keller, Defendant Hood shot him twice with the Taser.  The first electric charge caused Keller to fall to the ground, striking his head; a second followed while he was on the ground being handcuffed.  Keller alleges that he suffered a concussion and a brain hemorrhage from the fall, as well as "substantial pain" from the second shot.  According to Keller, before he emerged from the river, Defendant Turner discussed with

2

Hood using the Taser to subdue Keller and failed to direct his subordinate officer not to do so.

The facts are disputed as to whether Hood and Turner issued any verbal commands or warnings prior to firing the Taser towards Keller on either occasion. The parties also disagree about whether Keller physically or verbally threatened any of the responding police officers, and whether he attempted to flee or escape from the police.

Colonial Beach filed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 23, 2007; Defendant Turner filed his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 28. Defendant Hood filed his Answer on August 27, but has not filed a Motion to Dismiss.

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Generally, dismissals under Rule 12(b)(6) are disfavored by the courts because of their res judicata effect. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). A complaint need only have "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks

3

omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. In considering a motion to dismiss under Rule 12(b)(6), the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Martin*, 980 F.2d at 952.

### III. Analysis

**A.    Colonial Beach's Unopposed Motion to Dismiss**

Plaintiff did not respond to the Motion to Dismiss filed by the Town of Colonial Beach; instead the parties filed a Consent Order on October 9, 2007, agreeing to dismiss the action against Colonial Beach. Colonial Beach's Motion to Dismiss will therefore be granted, and the Town will be dismissed as a party to this litigation.

**B.    Defendant Turner's Motion to Dismiss**

Plaintiff has not alleged any action by Defendant Turner that directly caused his injuries; rather, Plaintiff seeks to hold Turner responsible for his *inaction*, through the doctrine of supervisory liability. Turner asserts, among other defenses, that he is protected by qualified immunity, and hence is not subject to suit. Qualified immunity provides "*an immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) (emphasis in original), and therefore "should be resolved at the earliest possible stage of the litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6, 107 S. Ct. 3034, 3042 (1987). However, an initial assessment of Turner's potential supervisory liability is necessary to determine whether

4

Turner's inaction was the kind of reasonable conduct protected by qualified immunity.

### 1.    *Supervisory Liability*

Plaintiff alleges that this Court should find Turner liable for his failure to control

his subordinate, Defendant Hood.  Supervisory liability is premised, not on *respondeat*

*superior*, but instead on "a recognition that supervisory indifference or tacit authorization

of subordinates' misconduct may be a causative factor in the constitutional injuries they

inflict." *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984).  In the Fourth Circuit, three

elements are required to establish supervisory liability in a Section 1983 claim:

> (1) that the supervisor had actual or constructive knowledge that his
> subordinate was engaged in conduct that posed "a pervasive and
> unreasonable risk" of constitutional injury to citizens like the plaintiff; (2)
> that the supervisor's response to that knowledge was so inadequate as to
> show "deliberate indifference to or tacit authorization of the alleged
> offensive practices,"; and (3) that there was an "affirmative causal link"
> between the supervisor's inaction and the particular constitutional injury
> suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  To be held accountable for a

constitutional injury, a supervisor must have been in a position to properly train and

control his subordinate so as to avoid the infliction of the injury.

For a supervisor to have actual or constructive knowledge that such a risk of

constitutional injury exists, the subordinate's inappropriate conduct must be "widespread,

or at least . . . used on several different occasions." *Shaw*, 13 F.3d at 799.  The plaintiff

in such a case ordinarily "cannot satisfy his burden of proof by pointing to a single

incident or isolated incidents." *Slakan*, 737 F.2d at 373 (citing *Orpiano v. Johnson*, 632

F.2d 1096, 1101 (4th Cir. 1980)). In *Slakan*, the Fourth Circuit found that supervisory liability was appropriate where prison supervisors "were all aware of seven recent cases" involving misuse of prison disciplinary measures, yet failed to instruct their employees as to proper inmate management. *Id.* at 371.

Here, there are no facts indicating that there was any pattern of inappropriate conduct by Hood, much less that Turner knew of such a pattern of conduct that would warrant his intervention. Plaintiff makes no allegations of any prior history of similar conduct on Hood's part. Under the immediate facts, construed in the light most favorable to Plaintiff, there is simply no evidence that would allow this Court to conclude that Turner had any knowledge that Hood posed "a pervasive and unreasonable risk" to Keller.

Plaintiff's attempts to satisfy the other requirements for supervisory liability are equally unavailing. Simply put, the Court cannot hold Turner accountable for inaction when there is no evidence that he had cause to act. Nor can the third element, an "affirmative causal link" between the supervisor's inaction and the injury alleged by Plaintiff, be found here. Where the supervisor has no cause to act, his inaction cannot be said to be causally linked to any injury the plaintiff may have sustained. There is no basis for supervisory liability under the facts of this case.

2. *Qualified Immunity*

Under the doctrine of qualified immunity, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). In the context of police action, the Fourth Circuit has interpreted this test to mean that a "police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful." *Shaw*, 13 F.3d at 801 (citing cases). The applicability of qualified immunity is to be assessed at "the time at which the action or inaction occurred." *Harlow*, 457 U.S. 800, 818, 102 S. Ct. 2738; *see also Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989) (cautioning that the reasonableness of an officer's use of force should not be judged "with the 20/20 vision of hindsight").

The Court must initially determine "whether the facts, when viewed in the light most favorable to the plaintiff, show that *the official's conduct* violated a constitutional right." *Henry v. Purnell*, __ F.3d __, 2007 WL 2729126, *2 (4th Cir. 2007) (emphasis added) (*citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001)). Therefore the Court need not presently decide whether Keller's constitutional rights were in fact violated, but only whether Turner's actions violated Keller's constitutional rights.

Here, Keller's family had called the police for assistance because he was "acting strangely." A two-hour standoff ensued, with Keller waist-deep in the Potomac River, resisting entreaties to peaceably return to the shore. Although it is unclear what

instructions he received from the police, or whether Keller engaged in any threatening actions, it is clear from the pleadings that Keller had been uncooperative and was apparently deranged for a significant period of time prior to Hood's use of his Taser. Keller was plainly seized within the meaning of the Fourth Amendment; Hood, "by means of physical force or show of authority . . . restrained [Keller's] liberty." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968). Turner may have foreseen that Keller would be seized and that some reasonable force would be required to effect such a seizure. As established above, however, there is no evidence that would suggest to a reasonable law enforcement supervisor that Hood would employ inappropriate force or engage in abusive conduct. Even assuming *arguendo* that Hood's seizure of Keller was unreasonable due to the use of excessive force, Plaintiff has not pled any facts indicating that *Turner's* actions violated Keller's constitutional rights.

On the merits, Plaintiff has failed to provide sufficient facts to support a claim of supervisory liability against Turner for Hood's actions. Because Turner's inaction was reasonable in light of the circumstances and did not violate Keller's constitutional rights, Turner is entitled to qualified immunity for his role in the events underlying this case. Consequently, Defendant Turner's Motion to Dismiss will be granted.

## IV. Conclusion

For the reasons stated above, both Defendant Town's and Defendant Turner's Motions to Dismiss will be granted, and both these Defendants will be dismissed from the

case. The action pending against Defendant Hood is unaffected by this Opinion.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
Henry E. Hudson
United States District Judge

Date: _Oct. 10, 2007_
Richmond, VA